UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM T. VOLLMANN,<br><br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>*Defendant*. | Civil Action No. 12-0939 (FYP) |

## MEMORANDUM OPINION

This matter comes before the Court upon consideration of Plaintiff William T. Vollmann's motion for an award of attorney's fees and costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E). Vollmann seeks a total fee award of $14,487.20. The Defendant Department of Justice ("DOJ") maintains that Plaintiff is neither eligible for, nor entitled to, a FOIA fee award, and that the amount sought is unreasonable. The Court finds that Plaintiff is eligible for and entitled to a fee award, but that the full amount requested is not reasonable. Accordingly, the Court will award a reduced fee in the amount of $9,491.70.

## BACKGROUND

Vollmann is a professional, full-time writer. On September 13, 2011, he submitted a FOIA request to the Federal Bureau of Investigation ("FBI") seeking access to "all records" in the possession of the FBI concerning himself. *See* ECF No. 1 (Complaint), ¶ 6. By letter dated April 9, 2012, the FBI responded to Vollmann's FOIA request and stated that it had reviewed

353 pages of material and would release 182 pages.  *Id.*, ¶ 8; ECF No. 10-2 (Ex. C FBI's FOIA Response).  On April 20, 2012, Vollmann submitted an appeal to the DOJ's Office of Information Policy.  *See* Compl., ¶ 9; ECF No. 10-2 (Ex. E Vollmann's FOIA Appeal).  The DOJ acknowledged the appeal on April 30, 2012.  *See* Compl., ¶ 10; ECF No. 10-2 (Ex. F DOJ's Appeal Response).

Following a period of inaction by the DOJ, Vollmann initiated the instant suit on June 8, 2012, seeking the disclosure of records maintained by the FBI.  *See generally* Compl.  After the DOJ filed its Answer on July 27, 2012, *see* ECF No. 4, the FBI informed Vollmann by letter dated August 24, 2012, that it had processed an additional 785 pages of records responsive to his FOIA request and would disclose 294 pages of material.  *See* ECF No. 10-2 (Ex. H FBI's Additional FOIA Response).  According to the FBI, "[u]pon further review" of Vollmann's initial request, it determined that the original scope of the search had been too narrow and the agency therefore had conducted a further search.  *Id.*  The FBI also "determined that [several potentially responsive records] were damaged during a recent flood of the [FBI's Alexandria Records Center], and are located on a refrigerated truck pending remediation, thus making them unavailable at this time."  *See* ECF No. 10 (Defendant's Motion for Summary Judgment), at 8–9; ECF No. 10-1 (Declaration of David M. Hardy). ¶ 26.

On January 16, 2013, by joint motion, the parties requested that the Court stay the case until November 15, 2013.  *See* ECF No. 11 (Joint Motion for Partial Dismissal and For a Stay of Further Proceedings).  The parties explained that the FBI had processed a total of 785 pages responsive to Vollmann's FOIA request; and that Vollmann did not challenge the search, the exemptions claimed, or the segregability analysis as to those records.  *Id.* at 1.  Consequently,

Vollmann "move[d] for partial dismissal with prejudice concerning the processed pages, [with] the parties to pay their own fees, costs and expenses." *Id.* The parties further explained that the flood-damaged documents would require remediation and therefore would take more time to process. *Id.* at 2.[1] As a result, the Court stayed this matter on January 17, 2013. *See* ECF No. 12 (Order Granting Joint Motion).

Between August 5, 2013, and February 29, 2016, the DOJ submitted 16 status reports, informing the Court of its progress in the remediation and processing of records. *See generally* Docket, *Vollmann v. DOJ*, No. 12-cv-0939. Beginning in August 2013, Vollmann began publishing pieces based on the documents that he had already received from the FBI pursuant to his FOIA request. Vollmann learned from the documents that he had been investigated by the FBI as part of its Unabomber and anthrax-mailing investigations. *See* Pl. Mot. at 6. In the September 2013 issue of Harper's Magazine, Vollmann published a nine-page article, titled *Life as a Terrorist: Uncovering My FBI File*, detailing his discoveries. *Id.*; ECF No. 37-1 (Ex. B Harper's Article). The article received widespread attention in the news media, including

---

[1] More specifically, the parties stated:

> There is another group of documents that have not been processed by Defendant FBI. With respect to these documents, Defendant represents as follows: During the FBI's search, potentially responsive serials 287, 641, 647, 669, 848, as well as serial 534 of AO file number 149A-SF-106204 (NK) were unavailable. It was determined that the unavailable parts of the case files were damaged during a flood of the Alexandria Records Center, and are located on a refrigerated truck pending remediation, thus making them unavailable at this time.

> Defendant further represents that the FBI records office hopes to have the records remediated by July/August 2013 (at the earliest). The FOIPA Unit has put a litigation hold on the serials and when they are available, if they are in a readable condition, can request them for processing and a supplemental release if the records are responsive. The FOIPA Unit will initiate an inquiry concerning the availability of the records for review in August 2013.

*See* Joint Motion at 1–2 (citation omitted).

coverage in several newspapers. *See, e.g.*, ECF No. 37-1 (Ex. D Daniel McDermon, *F.B.I. Listed Prize-Winning Author as a Unabomber Suspect*, New York Times, August 22, 2013); *id.* (Ex. E Ron Charles, *FBI Suspected William Vollmann Was the Unabomber*, The Washington Post, August 21, 2013); *id.* (Ex. F Carolyn Kellogg, *William T. Vollmann, Unabomber Suspect, Opens His FBI File*, Los Angeles Times, August 22, 2013). Vollmann was also interviewed on the National Public Radio program *Morning Edition* about the contents of the FBI records he received. *Id.* (Ex. G *Writer William T. Vollmann Uncovers His FBI File*, National Public Radio, Transcript, August 22, 2013).

Several years later, on March 31, 2016, the FBI informed Vollmann that it had located and reviewed an additional 375 pages of records that were responsive to his FOIA request, and that 69 pages would be released. *Id.* (Ex. A FBI's March 2016 FOIA Response). The agency also stated that the records it "believed to be a part of the 'freezer truck' collection" were "not responsive" to Vollmann's request, but that "[a]n additional search of a database" located both missing records and several more responsive records; it further noted that "[a]dditional material . . . was inadvertently deemed non-responsive in previous releases and has now been processed for this release." *Id.*

The DOJ thereafter submitted a final status report to the Court on April 15, 2016, which advised that "Defendant ha[d] completed its processing and release, where release was appropriate, of the remediated records and other records . . . at issue in this case." *See* ECF No. 35 (Final Status Report by DOJ). The parties jointly informed the Court on May 3, 2016, that Vollmann "[would] not challenge the agency's response to his request" but "intend[ed] to pursue a claim for attorney's fees." *See* ECF No. 36 (Joint Status Report). Vollmann subsequently filed

his Motion for Attorney Fees and Costs.  *See* ECF No. 37 (Plaintiff's Motion for Attorney's Fees and Costs).

## LEGAL STANDARD

The FOIA allows a court to award "reasonable attorney fees and other litigation costs reasonably incurred in any case" where "the complainant has substantially prevailed" against the government.  *See* 5 U.S.C. § 552(a)(4)(E)(i).  To recover fees and costs, a FOIA plaintiff must show both eligibility for an award and entitlement to it.  *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citing *Jud. Watch, Inc. v. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)).  "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus '*may*' receive fees."  *Id.* (emphasis added) (citation omitted).  If the Court determines that a plaintiff is eligible, "the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees."  *Id.* (emphasis in original) (citation omitted).

Finally, if the Court concludes that a plaintiff is eligible for and entitled to fees, it considers the reasonableness of the fees requested.  *See* 5 U.S.C. § 552(a)(4)(E)(i).  The Court may consider the number of hours spent on tasks, the requested hourly rates, the market rates in the relevant community, and the attorney's skill and experience.  *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  In determining fee awards, courts must keep in mind the purpose behind the FOIA:  to "encourage the maximum feasible public access to government information" and to "facilitate citizen access to the courts to vindicate their statutory rights."  *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977).  As a result, the "touchstone of a court's discretionary decision" is whether an award is necessary to

5

advance the goals underlying the FOIA.  *Id.*

## ANALYSIS

The DOJ challenges Vollmann's eligibility for and entitlement to an award.  *See generally* ECF No. 40 (Defendant's Opposition).  Defendant further argues that Vollmann's requested fees are unreasonable.  *Id.*  The Court addresses each of these issues in turn.

### I. **Vollmann Is Eligible for a Fee Award.**

There are two ways a plaintiff can show that he has "substantially prevailed" and is therefore eligible for a fee award under the FOIA.  First, a plaintiff substantially prevails when he secures "a judicial order, or an enforceable written agreement or consent decree."  *See* 5 U.S.C. § 552(a)(4)(E)(ii)(I); *Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 193 (D.C. Cir. 2007).  Second, a plaintiff substantially prevails when his suit causes a "voluntary or unilateral change in position by the agency."  *See* 5 U.S.C. § 552(a)(4)(E)(ii)(II).  The latter basis for prevailing is often referred to as the "catalyst theory," and rewards plaintiffs for instigating governmental action.  *Davis v. DOJ*, 610 F.3d 750, 752 (D.C. Cir. 2010) (explaining that Congress added Section 552(a)(4)(E)(ii)(II) in 2007 so that FOIA plaintiffs could recover fees when their lawsuits prompted the government's response); *Grand Canyon Trust v. Bernhardt*, 947 F.3d 94, 96 (2020) (noting that "a plaintiff can prove fee eligibility by showing that its lawsuit 'substantially caused the government to release the requested documents before final judgment'" (quoting *Brayton*, 641 F.3d at 524–25)).

Vollmann contends that he "substantially prevailed" under both theories.  *See* Pl. Mot. at 6–9.  First, he argues that he obtained judicial relief under Section 552(a)(4)(E)(ii)(I) when this Court issued several orders requiring status reports from the DOJ regarding its remediation and

6

processing efforts. *See* Pl. Mot. at 8 (citing Order Granting Joint Motion to Dismiss; Minute Orders of August 5, 2013; June 30, 2014; and July 23, 2014). Second, he maintains that under Section 552(a)(4)(E)(ii)(II), his suit caused a "voluntary or unilateral change in position by the agency," because Defendant initially informed Vollmann that it had completed its search but undertook further efforts in response to his suit. *See* Pl. Mot. at 9.

The Court agrees that Vollmann's suit caused a "voluntary or unilateral change in position by the agency." Under Section 552(a)(4)(E)(ii)(II), a plaintiff can obtain an award of costs and fees if "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation." *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981). The question under the catalyst theory is whether the institution and prosecution of the litigation caused the agency to release the documents obtained. *Grand Canyon Trust*, 947 F.3d at 97; *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 610 (2001) (noting that, under the "catalyst theory," the test is "whether the lawsuit was a substantial . . . cause of the defendant's change in conduct"). But "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg v. DOJ*, 745 F.2d 1476, 1496 (D.C. Cir. 1984); *see also Cox v. DOJ*, 601 F.2d 1, 6 (D.C. Cir. 1979) ("[A]n allegedly prevailing complainant must assert something more than *post hoc, ergo propter hoc*."). Rather, the plaintiff has the burden of showing "that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Pub. Citizen Health Research Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990) (citations omitted).

Here, Vollmann has shown that his lawsuit caused the DOJ to release responsive records.

Notably, the FBI changed course between August 24, 2012, and March 31, 2016:  On August 24, 2012, the agency informed Vollmann that it "ha[d] completed its search for documents responsive to [Vollmann's] FOIA request," *see* ECF No. 6 (Defendant Report); but the agency subsequently conducted several additional searches after Vollmann initiated this litigation, *see* Ex. A FBI's March 2016 FOIA Response.  There is no reason to suppose that those additional searches would have occurred if Vollmann had not filed suit.  *See Crooker v. Dep't of Treasury*, 663 F.2d 140 (D.C. Cir. 1980) (holding that sudden acceleration in processing resulting in disclosure can indicate that the lawsuit was the reason for that acceleration); *Church of Scientology of Cal.*, 653 F.2d at 588 (D.C. Cir. 1981) (determining that files were only searched in response to FOIA litigation; 200 files released as compared to six items before suit was filed).

   The DOJ's argument to the contrary is unavailing.  With respect to the FBI's second release of records, on August 24, 2012, the DOJ argues that "[i]t is unclear in the record whether the filing of the complaint caused the second search, or whether the second search was a product of the FBI following normal administrative procedures."  *See* Def. Opp. at 6; *see also* ECF No. 46 (Defendant's Response and Notice of Additional Supplemental Authority) at 7 ("[T]he fact that Plaintiff filed his lawsuit the same month when the FBI also expanded its search does not prove that the litigation caused the supplemental search.").  That argument misses the point: Vollmann is not arguing that the FBI's second release on August 24, 2012, indicated a change in course, but rather that the FBI's additional release of records on March 31, 2016, marked a change.  *See* Pl. Mot. at 9; ECF No. 41 (Plaintiff's Reply) at 3.  The March 2016 response letter states that the agency undertook "[a]n additional search of a database" and also re-processed

"[a]dditional material [that] was inadvertently deemed non-responsive in previous releases." *See* Ex. A FBI's March 2016 FOIA Response. Contrary to the DOJ's contention "that [the] FBI's supplemental search . . . was already in process pending the administrative appeal," *see* Def. Supp. at 8, the record reflects that after the FBI completed the supplemental search in August 2012, it undertook further action in March 2016 as a result of this litigation. Defendant stated on August 24, 2012, that the FBI intended to take no further action on Vollmann's request except remediation of the missing documents; yet the agency conducted additional searches and re-evaluated earlier withholdings, strongly indicating that "it is more probable than not" that Vollmann's suit prompted "a change in the agency's position regarding the production of the requested documents." *See Grand Canyon Trust*, 947 F.3d at 97–98 (citation omitted).

The same logic also defeats the DOJ's argument that Vollmann waived his right to attorney's fees on January 16, 2013, when he moved for a "partial dismissal with prejudice . . . the parties to pay their own fees, costs and expenses." *See* Def. Mot. at 7 (emphasis omitted). Again, the DOJ focuses on the wrong time period and fails to grapple with the "additional search of a database" and re-processing of "[a]dditional material [that] was inadvertently deemed non-responsive in previous releases" in March 2016. *See* Ex. A, FBI's March 2016 FOIA Response. The FBI released 69 additional pages in March 2016, which plainly post-dated any waiver of fees as of January 16, 2013.[2] Accordingly, Vollmann is eligible for attorney's fees because he has substantially prevailed under Section 552(a)(4)(E)(ii)(II) by causing a unilateral change in position by the agency that resulted in the further release of records in March 2016.[3]

---

[2]   Vollmann states clearly that he "seeks compensation only for work associated with [the 69 pages of] responsive records, located and released subsequent to the FBI's processing of the 785 pages referenced in January 2013." *See* Pl. Reply at 4.

[3]   The Court agrees with the DOJ that Vollmann is not entitled to fees because he obtained relief through "a

## II.     Vollmann Is Entitled to a Fee Award.

Once a plaintiff is deemed eligible for a fee award, the court must next determine whether the plaintiff is also entitled to such an award.  *Davy I*, 456 F.3d at 166.  In analyzing entitlement, the court weighs four factors:  (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents.  *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014).  "No one factor is dispositive," *Davy v. CIA ("Davy II")*, 550 F.3d 1155, 1159 (D.C. Cir. 2008), and balancing is left to the district court's discretion.  *Morley v. CIA*, 894 F.3d 389, 391 (D.C. Cir. 2018).

The DOJ does not dispute that the second, third, and fourth factors weigh in favor of Vollmann.  *See* Def. Opp. at 7–9; *see also Citizens for Responsibility & Ethics in Washington v. FEC*, No. 11-cv-951, 2014 WL 12935326, at *6 (D.D.C. Feb. 12, 2014) (holding that where the government does not contest a factor, the court may treat the factor as conceded).  The DOJ also does not dispute that Vollmann's publication of an article in Harper's Magazine based on

---

judicial order, or an enforceable written agreement or consent decree."  *See* Def. Opp. at 5.  Vollmann argues that the Court's periodic Minute Orders during the pendency of the case show that "it was necessary for the Court to closely monitor the agency's completion of processing."  *See* Pl. Mot. at 8.  But close monitoring does not constitute "relief."  Plaintiffs obtain "relief through a judicial order" when courts order an agency to produce records by specific dates or otherwise hold an agency to a production schedule.  *See, e.g.*, *Davy v. CIA ("Davy I")*, 456 F.3d 162, 166 (D.C. Cir. 2006) (finding plaintiff eligible because court "require[d] the Agency to produce all 'responsive documents' by the specified dates"); *see also Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 367 (D.C. Cir. 2008); *Campaign for Responsible Transplantation,* 511 F.3d at 197; *Edmonds v. FBI,* 417 F.3d 1319, 1326–27 (D.C. Cir. 2005) (all deciding on similar grounds).  Once a court order explicitly requires an agency to release documents, the agency's compliance can no longer be described as voluntary:  the legal relationship between the parties is changed by an enforceable order.  *See, e.g.*, *Campaign for Responsible Transplantation*, 511 F.3d at 197; *Davy I*, 456 F.3d at 166.  In this case, the Court never ordered the DOJ to produce records, but rather ordered the agency to "update the Court on the status of the remediation of the documents at issue in this case, including an estimate of when the contractors will complete remediation of those documents."  *See* Minute Order on July 23, 2014.  Thus, the DOJ's compliance remained "voluntary;" and Vollmann is not entitled to fees because he obtained a judicial order that granted him relief.

documents he obtained under the FOIA, and the resulting coverage of his story in major newspapers and on National Public Radio, "meets the public benefits requirement." *See* Def. Opp. at 8. But the DOJ reprises its argument that Vollmann waived any claim for fees as of January 6, 2013, *see supra*, noting that Vollmann's articles "date from 2013" and "were based on the FBI's April 2012 and August 2012 releases." *Id.* In the DOJ's view, because the FBI's later releases "did not reveal any significant new information concerning [the agency's] interaction" with Vollmann, Vollmann is ineligible for attorney's fees associated with obtaining the later-released information. *Id.* at 8.

The Court disagrees with the DOJ's analysis. Vollmann need not prove that the documents he received after 2013 actually advanced the public interest; rather, the Court must consider the "potential public value" of the information sought. *Davy II*, 550 F.3d at 1159. To have "potential public value" the request must have "at least a modest probability of generating useful new information about a matter of public concern;" and the Court assesses the "potential public value" of the information requested "with little or no regard to whether any documents supplied prove to advance the public interest." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016). The publication of Vollmann's 2013 article and the media buzz that it generated demonstrate that there was significant public interest in the FBI's investigation of Vollmann. *See* Pl. Mot. at 6 (recounting national news coverage of Vollmann's findings). And there was "at least a modest probability" that the documents released by the FBI after 2013 would encompass "useful new information" about that topic. *See Morley*, 810 F.3d at 844. Vollmann has therefore met the public-benefit requirement and is entitled to fees because the information that he received after 2013 had "potential public value." *Id.*

### III. Vollmann's Requested Award Is Unreasonable.

Courts have broad discretion to determine an appropriate fee award and may modify the request based on the reasonableness of the desired amount and the facts of the case. *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 203 (D.D.C. 2016) (citing *Judicial Watch, Inc.*, 470 F.3d at 369). Plaintiff bears the burden of establishing reasonableness. *Covington*, 57 F.3d at 1107–08.

A court's determination of an appropriate fee award begins by multiplying "the hours reasonably expended in the litigation by a reasonable hourly fee." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). The product of the two is referred to as a lodestar, which a court can adjust in appropriate circumstances. *Id.* To establish the reasonableness of hours spent, plaintiffs must submit "sufficiently detailed information about the hours logged and the work done . . . to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Fee applications should "include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents." *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) (per curiam). The reasonableness of a requested hourly rate turns on: "(1) the attorney's billing practices, (2) the attorney's skill, experience, and reputation, and (3) the prevailing market rates in the relevant community." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Covington*, 57 F.3d at 1107) (cleaned up).

Vollmann seeks a total award of $14,487.20: $9,464 for litigation-phase attorney's fees and $5,023.20 in "fees-on-fees" for time spent negotiating and drafting the instant motion and

reply in support of his request for attorney's fees. *See* Pl. Mot. at 16; Pl. Reply at 7 n. 3; ECF No. 43 (Plaintiff's Notice of Supplemental Authority) at 2. Vollmann seeks fees for 19.9 hours of work performed by his attorney, billed at rates from the Fitzpatrick Matrix maintained and updated by the United States Attorney's Office for the District of Columbia (USAO Fitzpatrick Matrix). *See* ECF No. 37-1 (Ex. H, Declaration of David L. Sobel); Pl. Supp. at 1.[4] The DOJ opposes Vollmann's request on two grounds, arguing: (1) that Vollmann may not recover for all the hours his attorney worked because Vollmann waived fees for some of those hours; and (2) that Vollmann seeks recovery at an unreasonable rate. *See* Def. Opp. at 9; Def. Supp. at 9.

The DOJ first contends that Vollmann may not recover fees for all 19.9 hours he claims because Vollmann waived recovery of the 3.8 hours his attorney spent on the preparation, filing, and service of the complaint when he moved for partial dismissal on January 16, 2013. *See* Def. Opp. at 9; Def. Supp. at 9 n.1. The Court agrees. Although plaintiffs generally may recover fees for the preparation and filing of FOIA complaints, *see Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 158 (D.D.C. 2015); *Am. Oversight v. DOJ*, 375 F. Supp. 3d 50, 70 (D.D.C. 2019), Vollmann may not do so here because he waived recovery of those fees when he moved for partial dismissal in January 2013. *See* Joint Motion at 1 (waiving "fees, costs and expenses" related to the FBI's processing of the 785 pages released as of January 16, 2013). Although the terms of Vollmann's waiver explicitly pertain to the "processing" of pages released as of January 16, 2013, and there is no mention of any fees related to the complaint, the waiver appears to

---

[4] A fee matrix is a chart averaging rates for attorneys at different experience levels. "For decades, courts in this circuit have relied on some version of what is known as the *Laffey* matrix." *DL v. District of Columbia*, 924 F.3d 585, 587 (D.C. Cir. 2019). The USAO's version of the *Laffey* Matrix — called the Fitzpatrick Matrix — is based on data for all types of lawyers from the entire metropolitan area. *Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 322 (D.D.C. 2020). It starts with "[t]he hourly rates approved in *Laffey* . . . for work done principally in 1981–82" as its baseline. *Eley*, 793 F.3d at 102. It then adjusts those rates to account for inflation by using the Consumer Price Index for All Urban Consumers (CPI–U) of the United States Bureau of Labor Statistics. *Id.*

preclude his recovery of any "fees, costs [or] expenses" incurred prior to January 16, 2013. *Id.* For example, it seems unlikely that Vollmann would have requested fees for the 3.8 hours spent preparing, filing, and serving the complaint if no further pages were released after January 16, 2013. At most, the waiver is ambiguous as to whether fees related to the complaint may be recovered, and Vollmann therefore fails to meet his burden of establishing his entitlement to those fees. The Court, therefore, will reduce Vollmann's compensable hours by 3.8 hours and set the first component of the lodestar at 16.1 hours.

The Court next considers the second component: the reasonableness of Vollmann's requested hourly rate. Vollmann initially used the historical annual rates set by the Fitzpatrick Matrix to calculate his requested recovery, seeking a total award of $10,731.[5] *See* Pl. Mot. at 15–16; Pl. Reply at 7. On December 7, 2021, however, Vollmann filed a Notice of Supplemental Authority highlighting "a recent opinion involving a long-pending request for an award of attorney's fees under FOIA." *See* Pl. Supp. at 2 (citing *Webster v. DOJ*, No. 02-cv-603, 2021 WL 4243414, at *12 n.7 (D.D.C. Sept. 17, 2021)). In *Webster v. DOJ*, the district court awarded attorney's fees under the FOIA based on current, rather than historical, rates because "awarding attorney's fees based on the hourly rate for the year in which the attorney performed the work undercompensates the attorney because of inflation and the time value of money;" to offset that under-compensation, the court awarded the current year's hourly rate for all the hours the attorney worked between 2001 and 2021. *Webster*, 2021 WL 4243414, at *12 & n.7 (citing

---

[5]   The Matrix operates along two axes, one corresponding to the year in which the work was completed and the other corresponding to the experience of the attorney who completed the work. For example, under the current Matrix, an attorney who completed work in 2016 and had 35 years or more experience at that time, is paid $619 per hour. *See* Fitzpatrick Matrix, https://www.justice.gov/usao-dc/page/file/1189846/download. By contrast, an attorney who completed work in 2021 and had 35 years or more experience at that time, would be paid at a rate of $736 per hour. *Id.*

*West v. Potter*, No. 05-cv-1339, 2009 WL 10659210, at *4 (D.D.C. Oct. 13, 2009)). Relying on that authority, Vollmann argues that his attorney should be compensated for all of his work at the current Fitzpatrick rate, instead of the rate that prevailed at the time that the work was performed. Vollmann's calculation increases his total award to $14,487.20. *Id.* Defendant objects to the application of the attorney's current billing rate under the Fitzpatrick Matrix. *See* Def. Supp. at 9 (explaining that the DOJ "does not oppose" using the 2021 Fitzpatrick Matrix to calculate Plaintiff's counsel's hourly rates, but "objects to applying Plaintiff's counsel's current maximum hourly rate" to all recoverable hours).

The Court declines to apply the current maximum Fitzpatrick Matrix rate to all the hours worked by Vollmann's attorney between 2013 and 2016. While "the D.C. Circuit has sanctioned the application of current prevailing rates — as opposed to the rates in effect when the work was performed — as a means of compensating the party seeking attorney[']s fees for the delay in receiving payment," *Tridico v. District of Columbia*, 235 F. Supp. 3d 100, 107 (D.D.C. 2017) (citing *West v. Potter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013)), it has only done so in circumstances where the delay in payment is attributable to the government, *see, e.g.*, *Webster*, 2021 WL 4243414, at *7–8 (applying current rates only after concluding that the DOJ delayed litigation); *see also West*, 2009 WL 10659210, at *4 (collecting cases). Here, Vollmann does not argue or cite any evidence that the DOJ delayed litigation in this matter, *see generally* Pl. Supp., and he therefore fails to overcome the "strong presumption" in favor of using historical rates. *See Tridico*, 235 F. Supp. 3d at 107 (citing *West*, 717 F.3d at 1034).

Accordingly, the lodestar amount will be calculated by multiplying "the [16.1] hours reasonably expended" by Vollmann's attorney by the annual rates laid out in the Fitzpatrick

Matrix.  *See Bd. of Trs. of Hotel & Rest. Emps. Local 25*, 136 F.3d at 801.  Based on this calculation, the Court will award Vollmann $9,491.70.[6]

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Attorney's Fees and Costs is granted in part and denied in part.  Defendant is required to pay Plaintiff $9,491.70 in attorney's fees.  A separate Order will issue this day.

                              FLORENCE Y. PAN
                              United States District Judge

Date:   April 14, 2022

---

[6]  The following charts show the Court's calculations using the USAO Matrix rates regarding the litigation fees for Vollmann's attorney:

**David L. Sobel - Litigation Fees**

| Years | Experience | Hours | Rate | Total |
|---|---|---|---|---|
| 2013-14 | 34 years | 1.0 | $534 | $534 |
| 2014-15 | 35 years | 5.7 | $563 | $3,209.10 |
| 2015-16 | 35+ years | 2.5 | $591 | $1,477.50 |
| 2016-17 | 35+ years | 6.9 | $619 | $4,271.10 |
|  |  | 16.1 |  | $9,491.70 |